Anna STARLING, Plaintiff,

v.

**BOARD OF EDUCATION FOR COUNTY OF MINGO, a statutory corporation; W. T. Floyd, Jr., Superintendent of Schools, J. B. Pitcock, William M. Adair, Tom B. Varney, C. Fred Shewey, and O. B. Glenn, Defendants.**

Civ. A. No. 927–H.

United States District Court
S. D. West Virginia,
at Huntington.
Aug. 12, 1959.

Willard L. Brown, Charleston, W. Va., and Brown H. Payne, Beckley, W. Va., for plaintiff.

Lant R. Slaven, Zane Grey Staker, Slaven & Staker, and Ersel L. Slater, Williamson, W. Va., for defendants.

HARRY E. WATKINS, District Judge.

Anna Starling, a Negro school teacher, has brought this action in behalf of herself and others similarly situated against the Board of Education and Superin-

tendent of Schools of Mingo County, West Virginia. The case was tried without a jury upon the following issues: (1) Was the Board of Education contractually bound to employ plaintiff as a teacher for the school year 1957–58?, and (2) Did the Board's failure to hire plaintiff for that year constitute an act of discrimination against plaintiff because of her race? Plaintiff seeks an injunction against further discrimination, and damages. Both issues must be answered in the negative and the relief asked by plaintiff is denied.

Under the laws of the State of West Virginia, a person must hold a valid teaching certificate to receive compensation. W.Va.Code C. 18, art. 7, § 15 (Michie, 1959 Supp.). There are various types of certificates, and of these, two are pertinent to the present case. The first of these is the Professional Certificate which, prior to 1957, was called a First Class Certificate. For present purposes, the terms may be used interchangeably. This certificate is valid for five years, and is subject to renewal. The second pertinent certificate is the Emergency Certificate; it is issued by the State Superintendent of Schools on the recommendation of the County Superintendent for a period of one year, and is not subject to renewal. It is valid only for a particular school, and is issued as an emergency measure, to keep schools open where there is a shortage of qualified teachers holding the Professional Certificate.

Having no First Class Elementary Certificate, in order for plaintiff to teach at the elementary level, it was necessary that she hold an Emergency Certificate. Superintendent Floyd, one of the defendants herein, had recommended plaintiff for such an Emergency Certificate for five years, the latest certificate expiring June 30, 1957. The purpose of the one-year Emergency Certificate was to take care of an emergency, and to permit the school teacher to go to summer school and qualify for a First Class Certificate. Obviously, the Board could not issue successive yearly Emergency Certificates to a school teacher indefinitely, otherwise few teachers would ever complete the requirements for a First Class Certificate. It was the policy of the defendants to refuse to recommend issuance of Emergency Certificates after five years. Since plaintiff had been issued Emergency Certificates for five successive years, when the Board met in May, 1957, to select the teachers for the school year beginning September 3, 1957, they did not employ plaintiff because the Superintendent, in accordance with the policy of the Board, would not recommend her for another Emergency Certificate. Twenty other teachers (all white) were cut off by the Board at the same meeting for the same reason.

Plaintiff relies upon a written contract signed June 4, 1956, with the Board entitled "Teacher's Continuing Contract of Employment." Clause (p) of that Contract provides: "This contract shall terminate if at the beginning of any school term the Teacher does not hold a valid teacher's certificate covering the period of such term; * * *." Other provisos follow which are inapplicable here, inasmuch as they relate to renewal certificates, and the Emergency Certificate held by plaintiff during the 1956–57 school term was not renewable. Plaintiff had been hired for the year 1956–57 school term only, and by West Virginia law could not then have been hired for any successive school term, and nowhere in the record does she make any such claim. She does not deny that the Emergency Certificate under which she taught for that year expired at the end thereof. The validity of the Emergency Certificate by its own terms did not extend beyond July 1, 1957. As a practical matter its validity ended with the close of the 1956–57 school term on or about May 20, 1957. By her own admission she held only an emergency teaching permit during the 1956–57 school term, and she could not teach the following year without further certification. The so-called "Continuing Contract" was in force only so long as she was validly certified, and ceased to bind the Board in any manner

upon the termination of the valid period of her Emergency Certificate. Plaintiff admits that when school started on September 3, 1957, she did not have a valid certificate of any type, either temporary or permanent. For a time prior to 1957 plaintiff held a First Class Certificate valid only for Home Economics through the ninth grade. Plaintiff had never taught a subject in Mingo County under that certificate inasmuch as there was no position in the entire school system which could be taught by one holding that particular certificate, and plaintiff does not here claim that that certificate has any effect in this action. Since plaintiff did not have any kind of an elementary teacher's certificate when school started on September 3, 1957, the Board was prohibited by State statute from employing her. W.Va.Code, 18–7–15. It was not until September 26, 1957, that plaintiff qualified and had a First Class Elementary Certificate issued to her. After receiving such certificate, plaintiff made no application for a teaching position for the 1957–58 school term or any part of it. Under date of August 3, 1958, after this action was instituted, plaintiff made written application for a teaching position for the coming year 1958–59. Having qualified, she was promptly recommended by the Superintendent, and on August 6 was offered her choice of five schools. Three of the teaching positions were in schools the enrollment of which was made up entirely of white students. Plaintiff chose a school with all colored enrollment, entered into a new contract with the Board on August 6, 1958, and has taught in the Mingo County Schools since that date.

▇ The procurement of a teacher's certificate was plaintiff's responsibility. Her contract ended because of her failure to become regularly certified. Plaintiff had no right whatsoever, either contractual or otherwise, to demand or receive a sixth Emergency Certificate, and no employment tenure or other rights became vested in her by virtue of the issuance or reissuance of previous Emergency Certificates. It was the duty of the Superintendent and the Board to secure teachers with the best possible professional qualifications and to discourage teachers from undertaking to teach year after year under Emergency Certificates.

▇ Insofar as racial discrimination is concerned, the evidence shows that instead of discriminating against this plaintiff, the defendants and, in particular, Superintendent Floyd had endeavored to aid her in every way. This is shown by the issuance to her of five Emergency Certificates as a matter of grace, not right, and the waiving of a practice teaching requirement without which waiver she could not have received her First Class Certificate in September of 1957. Superintendent Floyd consulted with the State Board of Education on different occasions in her behalf in her effort to become regularly certified.

The evidence shows that there was another reason why plaintiff was not employed for the year 1957–58. In February, 1957, there had been a flood of Tug River and the Gates school, where plaintiff had taught, had suffered a very substantial decrease in pupil enrollment due to the movement away from the area of many families, and due to the fact that several colored pupils had elected to go to another school where white children were in attendance, such that the teacher-pupil numerical ratio no longer warranted or permitted the employment of two teachers at the Gates school. Since the other teacher held a First Class Certificate, she was retained and the position held by plaintiff ceased to exist.

Prior to 1956, segregated schools were maintained in Mingo County. In March of 1956, the Board unanimously adopted a resolution recognizing that segregated schools were no longer lawful, and that the county schools should thenceforth be operated on an integrated basis. This resolution was effectuated for the 1956–57 school term, and no discrimination prior to that time is cogent to the present matter.

During the trial, plaintiff and five other Negro teachers testified. Of these,

one was the plaintiff's husband, a teacher employed by defendants, and he had no personal quarrel with the defendants. The other four teachers had at one time or another been declined employment in the Mingo County School system. Of these, the testimony of one was to the effect that she had been well treated, and was not unfavorable to defendants. Two others were qualified only in fields for which there were no openings in Mingo County, and the fourth was employed as a substitute teacher for the 1956-57 school term, taught elsewhere in 1957-58, and was employed on a full-time basis in Mingo County in 1958-59. None of these latter four contended that any racial discrimination had been shown them by defendants since the policy of integration was adopted.

The defendants have not discriminated against plaintiff or persons similarly situated on account of their race since the Mingo County schools became integrated. The contract designated "Teacher's Continuing Contract of Employment" terminated because, at the beginning of the school term 1957-58, plaintiff did not hold a valid teaching contract as required by the terms of the contract.

Plaintiff further asks that the following provisions of the laws of West Virginia be declared unconstitutional: Article XII, Section 8, Constitution of West Virginia, which reads "White and colored persons shall not be taught in the same school.", and West Virginia Code Chapter 18, Article 5, Section 14, which implements the constitutional provision. Since defendants do not contend that these provisions offer a defense to them, and, in fact, admit that the provisions are no longer given effect by them, the constitutionality of the statutes is moot insofar as this case is concerned, and a ruling is not deemed necessary by this Court.

Other points raised by plaintiff were: (1) that the First Class Elementary Certificate issued to plaintiff under date of September 26, 1957, was retroactive to July 1, 1957; (2) that there was a pattern "not to employ them because they are Negroes;" and (3) that the Board failed to put plaintiff on a preferred list at its meeting in May, 1957. These points are so unfounded that they do not merit further discussion.

An order may be presented effectuating the views expressed above, which are now adopted as the findings of fact and conclusions of law of the Court.